**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

In re:

FREDERIC B. O'NEAL

Case No. 6:05-bk-16040-ABB
Chapter 7

Debtor.
_______________________________/

ROBERT T. LEGO,

Plaintiff,

Adv. Pro. No. 6:06-ap-00039-ABB

vs.

FREDERIC B. O'NEAL,

Defendant.
_______________________________/

**MEMORANDUM OPINION**

This matter came before the Court on the Complaint Pursuant to 11 U.S.C. §§ 523(a)(2) and 523(a)(6) to Except Debts from Discharge ("Complaint")[1] filed by Robert T. Lego, the Plaintiff herein (the "Plaintiff" or "Lego"), against Frederic B. O'Neal, the Defendant and Debtor herein (the "Debtor" or "O'Neal"). Lego contends the Debtor is indebted to him for legal fees and expenses and such debts should be excepted from discharge. A final evidentiary hearing on the Complaint was held on September 15, 2006 at which the Debtor, the Debtor's counsel, and Lego, *pro se*, appeared. The Court makes the following Findings of Fact and Conclusions of Law after reviewing the pleadings and evidence, hearing live testimony and argument, and being otherwise fully advised in the premises.

---

[1] Doc. No. 1.

## FINDINGS OF FACT

### *Case Background*

The parties are experienced attorneys. Lego is a member of the Colorado Bar and the Debtor is a member of the Florida Bar. They became acquainted in connection with certain judgments entered by the Colorado federal and state courts against Michael Siemer ("Siemer") in class action lawsuits. The law firm of Pendleton, Friedberg, Wilson & Hennessey, P.C. (the "Pendleton Firm") was primary counsel for the class action plaintiffs and Lego was counsel for Siemer for a time. Lego withdrew as counsel for Siemer due to a fee dispute and obtained a Colorado state court judgment against Siemer in 1991 in the principal amount of $224,739.16 for unpaid legal fees ("Lego Judgment"). Lego, believing Siemer had assets in Florida, domesticated the Lego Judgment in Florida in April 1995 and engaged the Debtor as his collection counsel. They did not reduce the terms of their relationship to writing.

Lego and the Debtor undertook discovery and identified potential assets which information was helpful to the Pendleton Firm's collection efforts against Siemer. Lego recommended the Debtor to the Pendleton Firm to assist with collection of the class action plaintiffs' judgments. The Pendleton Firm, the Debtor, and Lego executed a Co-Counsel and Contingency Fee Agreement (the "Co-Counsel Agreement")[2] in November 1998[3] establishing, among other things: (i) the division of responsibilities amongst the attorneys (O'Neal was to take primary responsibility for pursuing the collection actions against Siemer); (ii) the payment of counsel on a contingency basis from any collection

---

[2] Defendant's Exh. No. 1, Plaintiff's Exh. No. 52.

[3] The Co-Counsel Agreement identifies Alan C. Friedberg with the Pendleton Firm and O'Neal as "Attorneys," Natalie Abrams and Walter C. Emery as "Clients," and Lego as an "Additional Party." Id. at pp. 12-15. Paragraph II.I.5 at p. 11 provides: "Notwithstanding any other provisions hereof, references herein to "client" or "clients" shall mean the Abrams Class and/or the Wow Creditors' Trust, and shall not include Lego who is an additional party to this Agreement."

recovery; (iii) first priority to reimbursement of expenses incurred by Lego in his efforts to collect on the Lego Judgment; and (iv) Lego was to receive a two percent finder's fee on the class action clients' ultimate recovery after costs and attorneys' fees were paid.[4] The Co-Counsel Agreement was approved by the United States District Court for the District of Colorado ("Colorado District Court").

The parties undertook collection actions against Siemer, which they refer to as the "Joint Collection Project." The Siemer Judgment was settled resulting in a recovery of approximately $6,750,000.00. The Lego Judgment was paid in full from the settlement. The relationship between the Debtor and the Pendleton Firm had deteriorated and extensive litigation ensued in the Colorado District Court relating to apportionment of the judgment proceeds amongst counsel.[5] Lego contends he was engaged to assist the Debtor in his fee dispute with the Pendleton Firm, which is referred to by the parties as the "Fee Dispute Project."

The fee apportionment dispute was ultimately resolved through a Joint Application presented by O'Neal, the Pendleton Firm, and other counsel involved in the class action litigation.[6] O'Neal received an award of approximately $228,393.40. The class action plaintiffs received a meaningful distribution from the remaining settlement proceeds.

A bitter fee dispute erupted between Lego and the Debtor with Lego contending the Debtor owed him fees for the Joint Collection Project and for the Fee Dispute Project. Lego sent a Statement to the Debtor dated June 15, 2000 for 834.5 hours of work

---

[4] Id. at p. 10, ¶II.H.1.
[5] *See* Exhibit A contained within Defendant's Exh. No. 21.
[6] Defendant's Exh. No. 21.

allegedly performed by Lego from June 12, 1998 through March 31, 2000.[7] The Statement contains no billing rate or payment amount sought by Lego. Lego did not bill O'Neal regularly, but kept track of his time by making notations on legal pads and his calendar and then dictated from the notations. He did not produce these documents or the taped dictation. Lego contends a letter from him to O'Neal in February 2000 memorializes the terms of their relationship.[8] The Debtor refused to pay Lego, contending he never engaged him to provide legal services.

Lego filed a Notice of Attorney's Lien ("Notice") in the Colorado District Court in February 2002 asserting a lien against any monies awarded or due to O'Neal for work performed by Lego relating to the Joint Collection and Fee Dispute Projects.[9] The Debtor filed a motion to strike the Notice[10] and a magistrate judge held a multi-day evidentiary hearing on the attorneys' competing claims to the settlement funds and Lego's lien claim. The magistrate issued a detailed Recommendation recommending the Debtor's motion to strike be granted.[11]

The presiding Colorado District Court judge accepted the magistrate's recommendations[12] finding no attorney-client relationship existed between Lego and the Debtor on either the Joint Collection Project or the Fee Dispute Project:

> It was the plaintiffs/judgment creditors who were characterized as 'clients' in the Co-Counsel and Contingency Fee Agreement. The fact that O'Neal thereafter purportedly engaged Lego to perform legal services at O'Neal's request and/or under O'Neal's direction is not sufficient to transform

[7] Defendant's Exh. No. 16.
[8] *See* Defendant's Exh. No. 12.
[9] Defendant's Exh. No. 2.
[10] Plaintiff's Exh. No. 40.
[11] Defendant's Exh. No. 3, Recommendation Regarding Joint Application for Approval of: (A) Proposed Allocation of Global Attorneys' Fees, (B) Costs, and (C) Final Distribution to Class Members dated May 20, 2002, at p. 56. *See also* the Supplemental Recommendation of the United States Magistrate Judge entered on May 22, 2002 (Plaintiff's Exh. No. 43).
[12] Defendant's Exh. No. 4, Order Accepting Magistrate Judge's Recommendation entered on September 18, 2002 in Abrams v. Southeastern Mun. Bonds, Inc., Civil Action No. 89-N-0150, at pp. 24-25.

> O'Neal into Lego's 'client' or wipe out the ethical improprieties which would be presented if the plaintiffs/judgment creditors were Lego's 'client.' Any benefit to O'Neal was entirely incidental, in that Lego claims to have performed legal work which O'Neal would otherwise have been required to perform. The real, intended beneficiaries of the work of both men were the plaintiffs/judgment creditors. Because the relationship between O'Neal and Lego was not that of 'client' and 'attorney,' Lego is not entitled to a lien on any attorney fee awarded to O'Neal herein.

September 18, 2002 Order at pp. 15-16. The court rejected Lego's contention he and the Debtor had an oral agreement for the payment of fees:

> Because of the contradictions, evasions, and half-truth which permeate their statements and claims, neither O'Neal nor Lego enjoyed much credibility with the magistrate judge, and neither is regarded as very credible by this court . . . A number of considerations persuade me that there is probably no oral agreement under which O'Neal owes Lego over $200,000 in attorneys fees for legal services rendered by Lego in the fee dispute among attorneys before this court.

Id. at 21. The court concluded:

> For the reasons stated, this court concludes that a preponderance of the evidence fails to establish the existence of a March 2000, oral agreement between Lego and O'Neal by which Lego acted as O'Neal's lawyer in the fee dispute. Lego's claim to an attorney's lien on this theory, like his claim based on the theory that he performed services in the Joint Collection Project, must be rejected.

Id. at p. 24.

The decision was affirmed by the United States Court of Appeals for the Tenth Circuit[13] in an unpublished written opinion:

> We hold that it was not an abuse of discretion to decline to enforce the claimed attorney's lien because Lego's evidence that O'Neal was his client for whom he rendered legal services on the joint collection project was insufficient and unpersuasive.
>
> . . .
>
> Lego's admissions that he was working on the joint collection project as a temporary attorney for O'Neal shows that he was attempting to do indirectly that which he could not have done directly, namely to represent

[13] Defendant's Exh. No. 5, Abrams v. Southeastern Mun. Bonds Inc., Case No. 02-1473, Order and Judgment entered on June 22, 2005 (unpublished).

> the plaintiffs against Siemer in the same litigation in which he had previously represented Siemer . . . In sum, Lego's argument that O'Neal was his client for the services Lego rendered in connection with the joint collection project is untenable. The district court therefore clearly was correct to strike the notice of attorney's lien as to that portion of the work Lego performed.
>
> . . .
>
> As to the fee dispute project, Lego similarly has offered nothing that justifies treating the relationship as a true attorney-client relationship, as opposed to simply to attorney who had joined forces in a common project. As a result, we again conclude that the district judge did not abuse his discretion in declining to afford equitable relief. Lego's evidence of the existence of an attorney-client relationship was insufficient and unpersuasive.

June 22, 2005 Order at pp. 9, 11, 13. Lego did seek further appeal of the decision.

The decisions issued by the Colorado District Court on September 18, 2002 and the Tenth Circuit Court of Appeals on June 22, 2005 are final determinations on the merits rendered by courts of competent jurisdiction. The findings of fact and conclusions of law contained in the decisions are adopted and incorporated herein.

The Plaintiff filed an eight-count Complaint against the Debtor on January 14, 2005 in the Colorado District Court seeking recovery of at least $206,760.00 for fees allegedly incurred by Lego in the Joint Collection and Fee Dispute Projects.[14] Lego alleges entitlement to payment based on: breach of the Co-Counsel Agreement and Fee Dispute Project; willful and wanton breach of the agreements; quantum meruit; and unjust enrichment.[15] The Debtor instituted an individual Chapter 7 bankruptcy case on

---

[14] Defendant's Exh. No. 6, Plaintiff's Exh. No. 48.

[15] The Tenth Circuit Court of Appeals did not separately address Lego's claim for quantum meruit recovery:

> The evidence of an attorney-client relationship was insufficient to support Mr. Lego's notice of lien under any theory, and the district court did not abuse its discretion by failing to specify that the *quantum meruit* claim failed on that basis, along with the other claims. We emphasize that we decide only that the district court did not abuse its discretion in declining to enforce an attorney's lien. Our study of the record shows that Mr. O'Neal has several times affirmed that he had some relationship with Mr. Lego in which Mr. Lego performed legal services with the expectation and understanding that he would be paid therefore by Mr. O'Neal. We offer no opinion on the validity or enforceability of any other claims that Mr. Lego may have.

Defendant's Exh. No. 5 at pp. 24-25.

October 14, 2005 ("Petition Date"). The automatic stay arose on the Petition Date staying Lego's action against O'Neal.

***The Pending Adversary Proceeding***

Lego filed a two-count Complaint alleging O'Neal is indebted to him for services rendered and incurred costs by Lego in connection with the Joint Collection and Fee Dispute Projects. He alleges he ". . . was retained by O'Neal as an attorney to assist O'Neal with regard to . . ." the Joint Collection and the Fee Dispute Projects.[16] Lego asserts the debt is nondischargeable because: (i) it was obtained by O'Neal by false pretenses, false representation, and/or actual fraud, or by the use of a false statement in writing; and (ii) O'Neal wrongfully caused injury to Lego and his property interests.

Lego filed an Affidavit post-trial setting forth his damages calculations.[17] He asserts total damages of $368,788.64 relating to count one, alleging he expended "reasonable hours" of 817.1 relating to the Fee Dispute Project resulting in fees of $183,847.50. He claims unreimbursed expenses of $80,531.51 are owed plus statutory interest of $91,364.08, plus interest of $13,045.55 accruing on an alleged loan made to O'Neal. Lego asserts damages relating to count two of $568,788.64, which includes the additional damages of $150,000 for lost business opportunities and $50,000 for emotional distress. O'Neal filed a Motion requesting the Affidavit be stricken ("Motion to Strike").[18] The Affidavit supplements Lego's testimony and the Motion to Strike is hereby denied.

The Complaint is largely an attempt to relitigate issues and claims decided on their merits in previous litigation in Colorado involving Lego and O'Neal. Final orders

[16] Complaint at ¶ 6.
[17] Doc. No. 36.
[18] Doc. No. 37.

and judgments were issued by the Colorado District Court and the Tenth Circuit Court of Appeals, which are courts of competent jurisdiction. Lego is barred by the doctrines of collateral estoppel and res judicata from relitigating the claims and issues decided by the Colorado courts.

The Colorado District Court determined no attorney client relationship existed between Lego and O'Neal and the determination was affirmed on appeal. Lego cannot challenge that determination. Some relationship other than an attorney-client relationship existed between Lego and O'Neal, but neither party has defined the relationship through credible evidence. Their relationship appears to be based on oral understandings and letters written after the fact in 2000. It is incomprehensible Lego and O'Neal, two experienced attorneys, failed to delineate the nature and terms of their relationship in a proper engagement letters and account for attorney time and expenses in regular invoices.

Whatever the nature of the relationship and its terms, the parties were willing participants. Lego and O'Neal, for several years, worked together on the Joint Collection and Fee Dispute Projects. A dispute arose only when O'Neal was awarded fees by the Colorado District Court. Lego has a claim against O'Neal for his alleged time and expenses, but the amount of such claim cannot be determined from the evidence presented. The resolution of this adversary proceeding does not hinge upon a determination of Lego's claim amount because Lego has not established the debt is nondischargeable.

Lego has not established O'Neal falsely promised, done knowingly and fraudulently with the purpose and intention of deceiving Lego, to pay Lego for legal services and expenses related to the Joint Collection and Fee Dispute Projects. Lego has

not established the Debtor made a false representation with the intent to deceive Lego and he justifiably relied on the misrepresentation. Lego has not established the Debtor willfully and maliciously caused injury to him. Lego has not established the debt is nondischargeable.

The Debtor received a discharge on February 10, 2006.[19] The indebtedness owed by the Debtor to Lego is dischargeable.

## CONCLUSIONS OF LAW

Lego challenges the dischargeability of the debt allegedly owed to him by the Debtor pursuant to 11 U.S.C. §§ 523(a)(2) and 523(a)(6). Lego does not specify the subsection of § 523(a)(2) upon which he bases count one of the Complaint, but it appears count one is based upon § 523(a)(2)(A). The creditor has the burden of establishing an exception to discharge by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991); Fed. R. Bankr. P. 4005 (2005). Objections to discharge are to be strictly construed against the creditor and liberally in favor of the debtor. In re Hunter, 780 F.2d 1577, 1579 (11th Cir. 1986); In re Bernard, 152 B.R. 1016, 1017 (Bankr. S.D. Fla. 1993).

### *11 U.S.C. § 523(a)(2)(A)*

A chapter 7 discharge does not discharge an individual debtor from a debt to the extent such debt is obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. §523(a)(2)(A) (2005). To establish fraud pursuant to §523(a)(2)(A), courts have generally required a plaintiff to establish the traditional elements of common law fraud. A plaintiff must prove: (i) the debtor made a false representation to deceive the creditor;

[19] Main Case Doc. No. 9.

(ii) the creditor relied on the misrepresentation; (iii) the reliance was justified; and (iv) the creditor sustained a loss as a result of the misrepresentation. SEC v. Bilzerian (In re Bilzerian), 153 F.3d 1278, 1281 (11th Cir. 1998). "The failure to perform a mere promise is not sufficient to make a debt nondischargeable, even if there is no excuse for the subsequent breach." 4 COLLIER ON BANKRUPTCY ¶523.08, at 523-44.10 (15th ed. Rev. 2005).

The Debtor did not make any false representations in order to deceive Lego. Lego and the Debtor worked willingly together on the Joint Collection and Fee Dispute Projects for several years. They were both parties to and executed the Co-Counsel Agreement. The evidence reflects the Debtor intended for Lego to be paid, but the parties failed to properly document the scope and terms of their relationship. They operated pursuant to an oral understanding. They may have been purposefully vague about their relationship in an attempt to "wipe out the ethical improprieties which would be presented if the [class action] plaintiffs/judgment creditors were Lego's client."[20]

Their failure to properly define the terms of their relationship in writing came home to roost when the Debtor received payment from the class action settlement and Lego asserted a lien against the funds. Lego has not established the Debtor obtained Lego's services through false pretenses, a false representation, or actual fraud pursuant to 11 U.S.C. § 523(a)(2)(A).

*11 U.S.C. § 523(a)(6)*

Section 523(a)(6) provides a discharge pursuant to § 727 does not discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The exception of a debt from discharge pursuant

[20] September 18, 2002 District Court Order at p. 15.

to § 523(a)(6) requires a plaintiff to establish by a preponderance of the evidence the debtor deliberately and intentionally injured the creditor or creditor's property by a willful and malicious act. In re Howard, 261 B.R. 513, 520 (Bankr. M.D. Fla. 2001). The United States Supreme Court ruled in Kawaauhau v. Geiger that in order to establish the requisite willful and malicious intent of § 523(a)(6), a plaintiff must establish the injury was intentional—that the debtor intended the consequences of his or her act. The Supreme Court explained, because "willful" modifies "injury" in § 523(a)(6), nondischargeability requires conduct that inflicts an injury intentionally and deliberately, "not merely . . . a deliberate or intentional *act* that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57, 61-2, 118A S. Ct. 974, 140 L. Ed. 2d 90 (1998).

Lego has failed to establish the Debtor deliberately and intentionally injured him or his property by a willful and malicious act. The Plaintiff is not entitled to a nondischargeability judgment pursuant to 11 U.S.C. § 523(a)(6).

***Claim and Issue Preclusion Doctrines***

Res judicata bars relitigation of matters decided in a prior proceeding if: (i) the prior decision was rendered by a court of competent jurisdiction; (ii) there was a final judgment on the merits; (iii) the parties were identical in both suits; and (iv) the prior and present causes of action are the same. Citibank, N.A. v. Data Lease Fin. Corp., 904 F.2d 1498, 1501 (11th Cir. 1990). "A final judgment on the merits bars further claims by parties or their privies based on the same cause of action." Montana v. United States, 440 U.S. 147, 153 (1979). Collateral estoppel precludes the relitigation of an issue that has already been litigated and resolved in a prior proceeding. Pleming v. Universal-Rundle Corp., 142 F. 3d 1354, 1359 (11th Cir. 1998).

The orders and judgments entered by the Colorado District Court and the Tenth Circuit Court of Appeals are final judgments on the merits rendered by courts of competent jurisdiction. The findings of fact and conclusions of law issued by these courts are binding in this proceeding. Lego is barred by the doctrines of collateral estoppel and res judicata from relitigating the claims and issues decided by these courts.

***Conclusion***

The Plaintiff has not established the alleged debt owed by the Debtor to the Plaintiff should be excepted from discharge pursuant to 11 U.S.C. §§ 523(a)(2)(A) or 523(a)(6). The debt is dischargeable.

A separate judgment in favor of the Debtor and against the Plaintiff consistent with these Findings of Fact and Conclusions of Law shall be entered contemporaneously.

Dated this 28th day of November, 2006.

ARTHUR B. BRISKMAN
United States Bankruptcy Judge